Your Honor, in this case 2-13-0581, the people of the state of Illinois at the lead will be Michael Moreno Apollon. Argument on behalf of the Apollon, Attorney Jack Hildebrand. Argument on behalf of the Apollon, Attorney Kristen Schumann. Good morning, counsel. Mr. Hildebrand. Thank you. May it please the court. My name is Jack Hildebrand. I'm representing the defendant in this case, Mr. Moreno. Within seconds of the car crash in this case, defendant initiated contact with Officer Pastry. And within a minute, they were both in that parking lot with the blue Honda. So basically, from the time of the crash until the time he gave his statement at the police station, he was with the police. And we have argued that the state did not prove him guilty of the aggravating leaving the scene for three reasons. The first one is that he was not capable of making the report within the first 30 minutes. The second reason is that the state did not provide any evidence whatsoever that he did not comply with the statute after he was discharged from the hospital within 30 minutes of that time. And the third reason is because the purpose of the statute was fulfilled within the first 10 minutes from the time that the accident occurred. Why is the law punishing, as a Class I felony, the act of not giving information to the police that the police already have? Well, let me ask you this. At what point does your reading of the record determine that the defendant actually knew that he had been involved in an accident? Well, if we look at his statement to the police, he knew at the time he was sitting at that strip mall. So he didn't know at the time of impact that he had been involved in an accident? He knew he had been involved in an accident, but with another person or another car, it's unclear. He didn't really state that. But he said in his statement when he was at the strip mall, he learned that it was actually a motorcycle that hit him. And then when these people came and identified him, he's the guy, he was involved in the accident with the motorcycle. He, while he was at the strip mall, said, you know, I thought I had hit a rock or something. So it's pretty noticeable when a motorcycle hits your car. I would think so, too. Yeah. I mean, the impact would have been pretty significant, correct? I would assume so. And the damage to the car, pretty significant. Yeah, I look at it the same way you do. But, you know, if the motorcycle was sliding, and I think it was, you know, if it just his head hit the car and the motorcycle hit the tire or something, I mean, I don't know what it would feel like. I would just assume that you would, that a person would reasonably know. Well, wasn't it in that parking lot with the blue car where he initially lays blame on the blue car and not on himself? Right. As he's talking with Officer Patrick or whatever the sergeant's, Patrick, as he's talking with him about it, doesn't he try to divert blame to the blue car as opposed to himself? Yes, he's blaming the blue car. I don't think he blames, I don't think he specifically says they were in the crash. I think he's blaming them for, you know, for whatever his personal problem is with these people. I suppose it would be consistent with his belief that if he didn't, he thought he may have run over a curb or run over a rock or something. I guess that would be, you know, consistent with it because he's still not aware that, you know, he's involved with a serious injury. And he's, you know, still worried about this blue car and these guys, you know, slapping him around or pointing a gun at him or whatever, for whatever. But I don't think he's saying that there. So what are you saying the reason is that he leads the police to the blue car because they were bothering him? Is that the reason you're saying he leads? Isn't he saying it's their fault? Isn't that what he told the police? It's their fault or something like that? They were at fault? They were at fault, yeah, I think they were. Well, so meaning the implication for an accident, right? Yes, it could be seen that way, yes. Okay. Well, is it your contention that compliance with the Statute 11-401B can only be had by physically going to the police station and giving the information at the police station? That a person could not impart that information that they were involved in an accident and give them the details at any other time they were with the police? For example, the five hours that the defendant was with the police? I would like for that to be the law, but it's specifically in there that you have to go to the police station. You know, maybe we're looking at this all wrong. Maybe this statute is only to apply to people who have really, truly, and successfully fled the scene. Well, Section 80 says you have to stay at the scene, does it not? That's right. Well, but the defendant didn't stay at the scene, certainly. No, so he's guilty of that, certainly. You know, on page two of my reply brief, I cite to People v. Young, which is a Supreme Court case, and they're talking about this Section B, the Class 1 felony section. And they're saying what that statute says is, you know, it directs drivers who have fled the scene to go to the police station and report. Fled the scene. That implies, you know, they're gone. They're unknown by the police. They are gone. You know, maybe it would be easier if we just applied this statute, and maybe it makes more sense to apply the statute to people who have actually fled the scene. Rather than scratching out parts of the statute, you know, do you have to go to the police station? Well, we'll just scratch that out. That doesn't seem, you know, reasonable. Rather than manipulating the statute to fit what we, you know, what we think is reasonable, maybe we're just applying it wrong. Maybe it applies to people who have actually left. For example, you know, if we're going to apply it to people like the defendant or people who don't really leave and get away and actually successfully flee, then we're going to get absurd results. For example, if a car gets in a crash, like here, and it keeps going, and then it decides, okay, you know what, I'm going to go back, render assistance, and take responsibility for my part in this accident. And he turns around and he goes back. Is he still going to have to go to a police station within 30 minutes or be guilty of a Class 1 felony? Well, isn't that your position? Yes. Yes, that's your position, that that's what the statute says. That's right. But if we follow that language in Young, and if we read Young as, you know, view that language as only allowing convictions under B for those people who actually fled the scene, then that person would not have to go to the police station. That's a reasonable way to resolve that situation rather than requiring him to go. And that would be consistent with this only applies where people have successfully fleed, and they're out on their own, driving around with the only thing with them is the obligation for them to do the right thing and go to a police station and report. I don't think this is supposed to be applied to people like the defendant. Well, if the defendant, let's assume the defendant wasn't aware immediately that he caused an injury or a death. I mean, what should the defendant have done once he was notified? He was told by the police that someone was killed by him in his car. What should he have done at that point? He should have immediately explained everything that the police wanted to, like any reasonable citizen would do. But this statute, you know, that's not what we're looking at, what a reasonable person would do. We have to look to the statute, what's required of citizens. So you're saying he had to go to the police station at that point, but because he was detained by the police, he couldn't have done that. Is that what you're saying? Yes. Yes, because I suppose, you know, this thing with Young, the language saying it's for people who flee. That's just my way. No, go ahead. I'm sorry. That's just another way of saying that if the statute, if everything that's required in the statute, if the purpose is fulfilled, we don't go convicting of people when everything's fulfilled in the statute because there's really been no violation, especially when you consider that this is a class one. How is it fulfilled here? At what point was it fulfilled? Well, first of all, he's a suspect immediately, you know, at the very least. And by the way, I like your comment about, you know, is any kind of admitting when he says it's, you know, it's their fault. Well, then he has just admitted to the police that he's at fault for the accident. So you can look at it that way, too. Now he's admitting, you know, fault for the accident. But anyway, once he gets... Well, wait just a minute, though, because I think the quote is something like it's a blue car that went that way. They're the ones who caused it. Several other times it's the blue car that did it. So it's not as if he is admitting in his involvement when he is saying, hey, it's that car over there that did it. Right. So just assume that for a moment here and continue on with where you think then. Let's just assume that that is not a legitimate admission of anything. Where else would you say at what point it had been, the statute had been fulfilled? I'm sorry. I understand what you're asking. Well, when they're pulling in Officer Pastrick, he sees collision damage on the defendant's vehicle. And if there's no collision damage on the blue vehicle, and obviously the people in the blue vehicle are going to tell him that we're not... We don't even know about an accident because they weren't even there. You mean the police officer? Officer Pastrick. Okay, when you say him. But certainly when they search his car, they have access to his name, address, driver's license, registration, VIN number. They have access to all that. And certainly when he's identified, his car is identified as being in the crash, and he is identified as the driver in the crash, then within 10 or 15 minutes of the time that was crashed, everything, they have all the information that is required under statute. It's completely fulfilled. So if the police can get it any other way and they have it, then the driver's off the hook. Is that right? Driver doesn't have to report. Is that what you're saying? Yes. Okay. I mean, why... It would be like, let's say there's an accident like this and the driver takes off and actually flees, and he lives a block away and he parks his car in a garage, and the police immediately arrive and his witness says, I know who lives involved in there. It lives right over there. So the police go over there and they go, can we look at your car? So he takes the police into his garage, shows them the car. The car is all damaged. And he says, you know, I was just getting ready to go back. It was me. I take full responsibility. Here's all my information. This is what I have, my driver's license, my registration and all of that. And then does he have to report that then when he gets, they arrest him, bring him to the police station? Does he have to repeat that then to make sure that he satisfies the requirements of the statute? I think that, you know, once, like for example in this case, if one of the officers went and they pulled out the vehicle registration, isn't that reporting, shouldn't that be considered reporting because he's got now the registration? Does the defendant have to say, officer, give me that back so I can hand it to you so I can be in compliance with the statute? Well, but I don't know that you've answered our question really. And that is, at what point did the defendant comply with the requirements of the statute? When the requirements of the statute were fulfilled. And so regardless of how they were fulfilled, meaning that the police, once the police had all the information that a driver is supposed to give them, a driver who's involved in an accident involving personal injury or death is supposed to give them, then the onus is off the defendant and that defendant has complied with the statute. Yes, and certainly what he knows that the police have the information and he does admit his involvement in the accident. But when he didn't do that until he was at the police station, did he later and was being questioned? Well, I think you can say that he admitted it while he was at the mall when they brought these witnesses and said, that's the guy, and he goes, well, you know, I thought I hit a rock, but he had already learned that a motorcycle had been involved. So he had all the information. So I would say he admitted it there. He admitted it at the hospital again by saying, you know, I thought the coast was clear. And then he admitted it again. I thought the coast was clear. So you're saying the police should have read into that. I did it. Oh, I think that's the only reasonable way to look at that. I mean, they hand them a ticket for crashing into the motorcycle. He takes the ticket and he goes, you know, I thought the coast was clear. What could he possibly be talking about there? Except that. That's how I would read that. Did the trial court make any credibility determinations with respect to whether or not it believed the defendant's statement that he thought he hit a rock or a curb? I don't recall anything like that. And I don't think it really amounts to anything because I think that the reasonable argument by the state was he obviously knew something hit him. And even if he didn't know if it was a motorcycle or a car, he had a responsibility to investigate. I think that would be the argument. So I really think what we're talking about here is when the defendant knows that the police have all the information, is he required then to fulfill the requirements of the statute once the purpose has – are we going to convict him? And your answer is no. No, not a class one felony after he knows they have all the information. So let me just try to clarify this a little bit more. Sure. And let's just assume some facts here. If they're at the scene or at this strip mall nearby, if they're at the scene and the defendant has made no statements whatsoever – I realize that's different than what we have here. Sure. Let's just say no statements whatsoever. And circumstantially, the police are able to piece everything together and get his driver's – the owner's information from his car, glove compartment and so forth. So let's just say everything is done by the police, nothing is done by the defendant. Does that satisfy the requirements of the law? I think if they have all the information – the only reason they're getting the information is because the defendant is there. If they have all the information, why are we convicting him of a class one for not giving the police information they already have when he's going to be convicted of the DUI, he's going to be convicted of leaving the scene, and he's going to be convicted of any other crimes that he committed? So your position then would be that the term reporting the accident, reporting, does not require any sort of action or statement from the defendant? I don't know if I'd go that far because it is coming from the defendant. I mean, this wasn't a complete – Not if he's not doing anything. If he's remaining silent and sitting on a curbside and observing the police as they put all the pieces together and they come up with it themselves, he's not doing anything. I think if he's observing them, taking his driver's license, taking – it's a tricky question because this statute does not fit. I mean, it just doesn't make sense, and we're trying to make sense out of it. Well, but if you look at the words – I mean, the legislature used the words reporting and report in here. Right. So if we read them out, your interpretation reads them out. Read those words out of the statute. It doesn't say it has to orally state them. You can report by showing, showing the other driver your driver's license, showing them – Well, but in Justice Spence's example, the defendant, the driver, did nothing, sits on the curb, but the police are able to get all the rest of the information. So I believe you said still the statute is fulfilled. And I'm saying, is it really because, again, the legislature chose to use the words reporting and report in here? And if we were to interpret it, at least in that scenario, the way you did, that would have – we'd have to read those words out of the statute. Which we know as lawyers we can't or shouldn't do. Because that would be saying that a person is guilty of a Class I felony if his wallet is sitting on the seat and he goes, yeah, my wallet's there, versus giving the wallet. Or just watching the officer take the wallet. That's a Class I, but if you just hand it to him without saying anything, that's okay. I don't see that that's a Class – that culpability rises to that. I think if he has it, it's reported. Especially if it's done – and we're not going to write – I don't think it's writing the language out, it's just interpreting it. What the state is asking is to write language out. Write out the language that you have to go to the police station, you have to cross that out. How do we get around that? And also writes in language that says you have to report it to the first police officer or you don't get any of the grace periods. That's not in the statute either. So my position is crossing out less and it's just interpreting what it means to report. You know, it gives it broad berth, you know, berth there to – as my interpretation is, but it doesn't actually stretch it out. Thank you. You'll get an opportunity to talk about that. Thank you. Thank you. Ms. Schwind. May it please the court. Good morning, counsel. Justice Spence, I just wanted to pick up on what you were asking the opposing counsel regarding whether or not the duty in Class I felony. And that was a big discussion in legislative history that's been amending Section 401 by increasingly decreasing the amount of time a driver has to report the accident. And increasing the penalty provision because legislature has time and time again stated that it is never okay to leave the scene of an accident. As a privilege of driving, you have to – it's your duty to give aid and render aid to the victims of the driver incident, to give information. And the legislature has found, as they continue to decrease the time in the reporting and increase the penalties, that this is a serious offense. And just because it's a Class I and it doesn't seem to be a Class I doesn't mean that this court should vacate the decision because it seems harsh to be a Class I offense. The legislature determined that this is a serious penalty that merits a Class I probation. And it's because, as I stated on pages 5 and 6 of my brief, the legislators were concerned that it is never okay to just leave the scene of the accident, to not render aid. Well, that's Section A, but we're now focusing on Section B, which we have a problem with in terms of how does a person – how can a person comply? Is it sufficient that the information, number one, be given by a driver to the police, even if they're not at the police station? Does that meet the requirements of the statute, or does the information actually have to be given while someone's at the police station? Or, right, while they're at the station. Respectfully, first of all, in terms of A versus B, those same conversations about the seriousness of the offense was discussed both when they were enacting A and when they continued to amend in B, which were the provisions. Right. That's understood. Secondly, in terms of whether or not a defendant is absolved of liability or responsibility because the police are investigating it as well, there's no exception read into the statute. There's no exception that a defendant – or, excuse me, a driver has no duty because the police are also investigating. I believe the trial court, in its written memorandum, cited people v. Snodgrass, and that's on page 96 of the common law record. And in that case, it determined that even if the police are investigating, that doesn't remove – that doesn't absolve the defendant's duty to continue to do its responsibility and its duty under the act. So at what point could the defendant here have complied with the statute? I mean, the police detained him at the scene shortly after – you know, at the strip mall. Then they took him to the hospital for testing in connection with the accident. And then they took him to the station and took a statement from him. So at what point could he have complied? Respectfully, the moment he turned to the cop right after the accident and affirmatively misled him on the information and led them on a wild goose chase away from the accident, away from even the officer to render aid, where the defendant is more concerned about how he was wronged than by how his actions or his involvement in the accident – at that point, it really becomes difficult to determine when he could have done it. Because he – and I believe, as Justice Edelman and Justice Spence indicated, he continually told Sergeant Pastrick, it's the blue card, they went that way, they caused it. When Sergeant Pastrick asked if he was involved, the defendant issued no response and then rather stated, it's the blue card, they went that way. So it's difficult to determine when he could have done it, when he continually misled the police as to his involvement. And in terms of credibility finding, Justice, you know, if you asked about that, again, on page 96 of the common law record, in making its written ruling, I'll read that the court stated as such, it lists four statements by the defendant in determining that he – in rejecting the defendant's argument of trial that he had no knowledge of the accident. These four statements were that he looked back and felt an impact at the turn and saw another car going through the intersection that he thought had hit him. That he – his statement heard by another witness saying that it's a guy hitting a cycle back there. His statement to the – to Sergeant Pastrick after he heard a crash when he said, the blue card, they went that way, they caused it. And when he asked if he was involved, the defendant gave no response. And then later when the defendant stated that the police felt an impact, that cycle came out of nowhere and the truck blocked his view. The court goes on to say that despite defendant's repeated other statements that he did not know the motorcycle had struck his car, and that he thought he had hit a rock, the above contradicts his position. The evidence clearly shows that the defendant made no attempt to comply with the requirements of section 401B. So I believe that that is a credibility determination in terms of not believing that the defendant had no idea he did have knowledge of the accident. And he chose instead of being concerned with his involvement in the accident or just in concern about the state of the victim, he was more concerned about this blue car and how the blue car had wronged him earlier in this road rage incident. And as such, that would be, you know, he did not comply with 401B. Well, now, I asked defense counsel this question, but when does your reading of the record determine that the defendant knew he'd been involved in an accident? At what point? The record would, based on the trial court's determination in the record indicates the moment he hit the motorcycle. But didn't he say later on when he spoke to the police at the station that he thought he'd hit a rock or a curb? He believed that, and as the trial court stated, he believed that his previous, his other statements contradict that position. And as the evidence showed, there is quite a large dent in the right side of his car, and it's not on the bottom. It's on the side of the car, in the side of the rear passenger, excuse me, vehicle. I mean, that is a large, a large dent. And so therefore, it's the people's decision that he knew the moment that the impact occurred. And because he was not concerned with the victim, which is exactly what 401B wants you to be concerned with, the victim, to give aid, to give the information, to prevent concealment of your involvement in the accident, he was not concerned with any of that. He was concerned with how the other car had wronged him. And in terms, I believe, there is nothing in the case, or in the statute, nor in the legislative history, that says that there is no longer a duty because the police are investigating the accident as well and the involvement. There is nothing in the statute that reads that as such. What is the purpose of the statute, Section B? The purpose of the statute, Section B, is to encourage people. It's actually, it's a second chance. It's a second chance provision in that if you leave the scene of the accident under A, you're automatically guilty. But as the legislators have indicated, they're trying to give the drivers an opportunity to not be convicted of a felony conviction as opposed to a misdemeanor conviction. But the purpose of the wording of the statute, of requiring somebody to report the accident, what is the purpose? The purpose, and I believe that was in People v. Snodgrass, they found that the purpose of the statute is to prevent concealment of an accident by the driver involved. So that the victim would know who the driver was. Correct, and that goes in line with 403, which is the duty to give aid and information. So if the police are able to find out that information, why is there then still an obligation on a driver to disclose that information directly to the police if they already have it, to be able to give to the victim? There might be other information that the driver has that the police don't have. There's a number of hypotheticals where the officers might have some information, but the driver, in giving his information, might have additional information for the officers. But the bottom line is that it's a privilege to drive on these roads. Right, but the statute requires the place, the date, the time, driver's name, address, registration number, names of all other occupants. I mean, that's the requirement. Those are the details, the extent of the details that are required in the statute. If the police have those, then why must a driver give them a second time? Does that make sense? It does make sense. The legislature obviously indicated, you know, found that there's a duty to report this information to give aid. If they had determined that there was going to be an exception because the police had done their investigations, they would have read an exception into it. And they did read some exception in such that if there's a report required on this paragraph, and it does happen, no report should be used directly or indirectly as a basis for the prosecution. So, I mean, obviously they've considered that that sentence alone would indicate that the legislature believed that there might be dual investigations going on. One that the driver would be reporting, plus the police might be investigating at the same time. But, again, the overarching emphasis on this statute, and as the legislature continued, when they continued to decrease the time until you can report and increase the penalties, was that it is never okay to leave the scene. It's never okay to not give aid and to not give your information. And that's exactly what the defendant did here. He didn't comply with anything. He was more concerned about getting this blue card than he was about any aid. Let me go back again. I know I asked this once before, but I think I'd like to go over it again. Since the police, at the time they had him at the strip mall, they then placed him under arrest then, did they not, or took him into custody for obstruction. Objection and protection. Right. Unrelated to the accident. So we know he couldn't have gone to the police station then. And then they took him to the hospital for testing. So he couldn't have gone to the police station then. How did the state prove that after he left the hospital that he didn't go within 30 minutes to the police station to report this? Because, I mean, he ended up going to the police station. So where did the state meet its burden? Sure. Well, there's two response to that question. Under B, it says that a person who has failed to stop or comply with the requirements of A, shall as soon as possible, but no later than, within 30 minutes of leaving the scene of the accident or the hospital. This, as soon as possible, which was enacted when they lowered the time from three hours to one hour, and I believe that was in 1997. I can get that for you, Your Honor, if you'd like. They wanted to comply as soon as possible. The defendant had the opportunity to comply as soon as possible. And when the state questioned Sergeant Patrick, they went through, and I believe, give me one moment, please. Went through on pages 269 through 270 of the report of proceedings. The state went through and asked the sergeant who was with him from the moment the accident occurred until, in his testimony on page 291, approximately a little after 9 o'clock or between 9 and 10 when he took him to the station, did he ever give you the date of the accident? No. Did he ever give you the name or the address of him? No. Did he give you the registration number of the vehicle driven by himself? No. So in all of those instances, as soon as possible, he did not comply with that. Further, in terms of if, alternatively, it's within the 30 minutes, the evidence shows that, and again, on page 291 of the report of proceedings, the sergeant testified that he made contact with him just about 5 o'clock and they left the hospital just after 9 or between 9 and 10. And the defendant's brief is decided in the video at 941 is when he starts discussing the accident and about he might have hit him, there might have been a rock. At about what time? 941, I believe that that's on, give me one moment, please, Your Honor. And you say that's? That's on page 5 of the defendant's opening brief where he says, I kept going, there's a truck or something passed me. I didn't even see this other guy. I just turned and boom, he hit me. So that's the first time you're saying that he admitted involvement in the accident? More than a rock or the other, the blue car caused it. Taking all the reasonable inferences in to the record in terms of the state, which is for reasonable doubt, as a trial court, as a trier of fact properly found, there was sufficient evidence to find that he did not comply with any of the reporting requirements under 401B. Anything else? No, just for the foregoing reasons, we ask that you affirm the conviction. Any other questions? No, thanks. Thank you very much. Mr. Hildebrand? Well, I think it's important to remember that all of this information that was gathered during this entire time from the beginning to the end, the defendant was with the police. All this information was gained while he was with the police. It's not like he went off and took off and was gone and missing and the police investigated and got all this information on its own. He was there. He's with them while they're getting all this information. And they wouldn't have been able to get most of that information without him being there. Now, the state has argued in its brief. Well, but the statute isn't worded that if the police can't get the information, then the driver has the responsibility to report, is it? That's not what the legislature wrote. They put the onus on the driver. That's correct. And then we get into, you know, what does report mean? And that's when I give a broad definition of reporting. When you're right there and he has your driver's license, that should be considered as reported. Otherwise, you'd have to take it back and then hand it to him. How do you respond to counsel's argument with respect to what the legislature has done with respect to increasing the penalty, shortening the time to then put the onus again on the defendant and not the police? The defendant to affirmatively take a step. Yes. Well, first, the state says that the legislature said it's never OK to leave. Well, that's true. But then why are we giving them a second chance after they've done the absolute wrong thing? They've absolutely broken the law. But then we said, well, it's OK now to come back and be in less trouble. We just want the information. That's what the statute's about. Shortening the time, I think that that may be what's really behind that is for drunk drivers that want to get away, sober up and then report. You know, that shouldn't be happening. And perhaps to shorten, that's the way I view it. I think that's good. You know, that if we're going to allow this grace period, you know, let's make it a reasonable time rather than encouraging people to go out and hide themselves away. And did the defendant really think when he approached the police and said, you know, it was the blue car's fault that he was actually saying that the blue car was involved in the accident? I think it's more like saying that they're at fault for me getting into the accident or something crazy like that. But whatever it was, did he actually think by tracking down the blue car that they were going to charge the blue car with being in that accident? That's just ridiculous. If he knew that he got into a crash, then why would he take the police and track down the blue car? Well, counsel suggested that he wanted to mislead the police away from himself. If he's going to mislead the police, then they can charge him. That's an offense in and of itself. You can't give false reports to the police department. If the state believed he was making statements that were purposely misleading them away, he could have been charged with that. There's punishment for that. Well, he did lead them away from the scene of the accident, didn't he? Well, if that was a crime, then he could have been charged with that. You know, all we're concerned about is whether or not he violated Section B. He's guilty of all this other stuff. You know, that's what we're really concerned with. And about Snodgrass, that case, that defendant, when confronting with the police, didn't admit guilty even then. And they had to track him down. And that's what makes it different from here. And I think that, you know, the defendant did admit to pestering at the hospital that he was involved. How else could that be read? And what was the evidence? You know, if we're going to extend this hospital 30 minutes, the state just didn't present any evidence. We don't know when they left the hospital. We don't know when they got to the police station. We don't know if the defendant, as soon as going into the police station, made the required report even before the interview. So there just is no timing evidence that they're required to show. This is, you know, a little bit more difficult to prove for the state. Granted, because we're talking about an omission of doing something. But if somebody makes a report at a police station, they have to go and somebody has to make a report about that. So you just subpoena that report and say, did Mr. Moreno file the report in the police station? That's how you would have to prove it. It's more difficult to prove the omission than did Mr. A punch Mr. B in the nose and you have a witness, that's the end of it. But it's a little bit more difficult when you have an omission. But in this case, there was no evidence to back that up. Thank you. Thank you very much. Thank you, counsel. The court will take the matter under advisement and render a decision in due course. Court stands adjourned for the day. Thank you very much.